IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHARLES R. BRYSON, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-331-JHP
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Charles R. Bryson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 29, 1960 and was 45 years old at the time of the ALJ's decision. Claimant completed his education through the seventh grade. Claimant has worked in the past as an automobile technician and truck tire maker. Claimant alleges an inability to work beginning January 1, 1996 due to a back injury and subsequent surgeries.

### Procedural History

On November 3, 2003, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) and supplemental security income pursuant to Title XVI of the Social Security Act

3

(42 U.S.C. § 1381, et seq.). Claimant's application was denied initially and upon reconsideration. On July 7, 2005, a hearing was held before ALJ Jodi B. Levine in Ardmore, Oklahoma. By decision dated December 27, 2005, the ALJ found that Claimant was disabled during the closed period from June 2, 2002 through December 3, 2003. However, the ALJ found Claimant's disability ceased after that date. On August 16, 2007, the Appeals Council declined to review the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing, did not retain the residual functional capacity to perform his past relevant work, but found Claimant did retain the residual functional capacity to perform a significant range of sedentary work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) finding his disability ceased and he made medical improvement beginning December 3, 2003; and (2) finding the testimony of the vocational expert and medical expert did not support a finding of disability.

### Medical Improvement

Claimant asserts the medical evidence does not support the ALJ's finding that he reached medical improvement after December 3, 2003 such that he could return to sedentary work. The medical evidence indicates Claimant underwent an anterior interbody fusion at L5-S1 on October 17, 2000 after a lumbosacral MRI indicated a right paramedian annular tear at that level. (Tr. 126). The surgery was performed by Dr. Brent N. Hisey. (Tr. 123). On July 3, 2001, Dr. Hisey limited Claimant to jobs with a 10 pound weight lifting restriction and no repetitive motion of the lumbar spine. (Tr. 117). In a July 9, 2001 visit with Dr. Hisey, Claimant experience increasing back pain with radiation into the right lower extremity. (Tr. 116).

On September 28, 2001, Dr. Hisey noted Claimant's flexion and extension views demonstrated no motion. However, some lucency was noted at the anterior graft site. A CT scan revealed Claimant was starting to reabsorb one of the bone dowels and the other one showed lucency. Dr. Hisey found Claimant had been smoking which caused pseudoarthrosis. Dr. Hisey recommended that Claimant's fusion be reinforced and stabilized posteriorly with a pedicle screw system and a bilateral-lateral bone graft. (Tr. 114).

On April 30, 2002, Claimant presented with pain very low in his back or buttock region bilaterally with some anterior thigh numbness. As a result, Claimant underwent a lumbar discography at L3-4 and L4-5, performed by Dr. Gaylan D. Yates. Dr. Yates found

normal disks with no pain. (Tr. 129).

On December 19, 2002, Dr. J. Patrick Livingston reported Claimant's condition had improved. He states the fusion has healed and he would consider getting Claimant out of his brace. (Tr. 130).

On June 9, 2003, Claimant was evaluated by Dr. Hugh G. McClure in connection with his worker's compensation case. His diagnostic impressions of Claimant's condition were (1) discogenic pain cervical spine, with referred pain to the bilateral posterior shoulder areas, the left greater that the right; and (2) post surgical fusion lumbar spine, times one level, maximum medical improvement. (Tr. 140). He concluded Claimant had suffered a steady and continuous worsening of the condition of his cervical spine and that treatment should continue. (Tr. 141).

On June 24, 2003, Claimant was allowed to discontinue the use of a back brace by Dr. W. Emery Reynolds. (Tr. 159). On September 23, 2003, Claimant returned to work with the following restrictions set out by Dr. Reynolds: (1) four hours per day of work; (2) no stationary positions for greater than twenty minutes at a time; (3) no lifting greater than five pounds; (4) no repetitive lifting or bending; and (5) no stooping or prolonged squatting. (Tr. 154).

On October 2, 2003, Dr. Reynolds again saw Claimant. He noted Claimant was anxious to get back to some type of employment. Dr. Reynolds noted Claimant wanted a relaxing of the restrictions

placed upon him to allow him to work six to seven hours per day but that Dr. Reynolds did not accommodate this request. (Tr. 153).

On November 4, 2003, Claimant was attended by Dr. Reynolds. Dr. Reynolds states Claimant is attempting to make contact to return to work at Wal-Mart with little success. Dr. Reynolds anticipated Claimant could return to work in four weeks "with the limitations that [have] been previously stated." (Tr. 152).

On December 3, 2003, Dr. Reynolds released Claimant from his care with the restrictions as noted on his Form 5. He did not believe Claimant could return to his previous job with Wal-Mart in their automotive department as it would be too strenuous. As a result, Dr. Reynolds recommended Claimant undergo some vocational re-education. (Tr. 151).

On March 11, 2004, Claimant underwent a consultative examination by Dr. Dennis R. Whitehouse. Dr. Whitehouse found some inconsistencies in the examination with Claimant complaining of chronic low back pain. However, Dr. Whitehouse found Claimant had a full range of motion with distraction and observation. He had a decreased range of motion to his back. He could not flex beyond 60 degrees but was able to sit on the table with his knees flexed at 90 degrees without difficulty with extension to 10 degrees and side bending was 15 degrees. Claimant grimaced and showed a lot of discomfort during the testing but had a full range of motion in his shoulders. Claimant complained of pain into the lateral aspects of

7

his shoulder when performing the range of motion testing. Dr. Whitehouse states he observed Claimant walking through the clinic and down steps without significant difficulty, was able to get into his pickup truck, "seemed like he had significantly improved range of motion getting into the truck than what I was able to observe with his back while he was seen in the clinic. He was able to reach around and to put his seatbelt on." (Tr. 213).

Claimant also underwent a range of motion evaluation by Dr. Whitehouse. He found Claimant had decreased range of motion in his back with extension reduced to 10 degrees out of 25 degrees, flexion reduced to 60 degrees out of 90 degrees, back lateral flexion reduced to 15 degrees out of 25 degrees on the left and right. Dr. Whitehouse also found Claimant's neck extension was reduced to 20 degrees out of 60 degrees with direct testing but a full 60 degrees upon observation after distraction. (Tr. 237).

A Physical Residual Functional Capacity Assessment form was completed on April 1, 2004. Claimant's exertional limitations were determined to be occasional lifting and carrying 20 pounds, frequently lifting or carrying 10 pounds, standing and/or walking for about 6 hours in an 8 hour day, sitting for about 6 hours in an 8 hour day, and unlimited pushing and/or pulling. (Tr. 222). Claimant was found to have no postural limitations, except upon his ability to stoop, which he could only do occasionally. (Tr. 223).

On December 6, 2004, Claimant was attended by Dr. Pamela

Ahearn. She assessed Claimant as having suffered a spine injury, noting his prior medical history, including the prior fusion. (Tr. 234). On January 4, 2005, Claimant again saw Dr. Ahearn and was assessed with COPD exacerbation. (Tr. 233).

Cervical spine x-rays on January 28, 2005 showed no evidence of a fracture or subluxation. But did note moderate disc space narrowing at C5-6 and C6-7. Associated degenerative changes were present in the form of subchondral bony sclerosis and marginal osteophytic spur formation. The spurs encroached upon the intervertebral foramina bilaterally, most marked at C3-4. (Tr. 230).

On February 11, 2005, Claimant was assessed with bilateral Eustachian tube dysfunction. (Tr. 229).

On March 2, 2005, Claimant complained to Dr. Ahearn that he was experiencing pain all over and right leg numbness. Dr. Ahearn assessed Claimant with cervical and lumbar pain, s/p lumbar fusion, and HTN. She ordered cervical spine and lumber x-rays and pain management. (Tr. 232).

On July 8, 2005, Claimant underwent a lumbar myelogram. The testing revealed a previous fusion at L5-S1 and previous laminectomy at L-5 with mild nerve root truncation noted bilaterally at L4-5. (Tr. 240-241).

From June 17, 2005 through July 28, 2005, Claimant was attended by Dr. Ahmed Amayem. His July 28, 2005 examination

9

revealed tenderness in the lower lumber levels on palpation of facet joints, bilateral tender palpation over SLJs, tenderness over buttocks and thighs bilaterally, range of motion limited in last degrees all directions due to pain and stiffness, moderate paraspinal muscle spasms, positive facet loading extension. Dr. Amayem diagnosed Claimant with FBSS ("Failed Back Surgery Syndrome"), sensory radiculopathy LEs, and facet joint artheropathy. (Tr. 242-243).

Claimant was examined by Dr. Harvey Jenkins on June 17, 2005 with complaints of low back pain. Dr. Jenkins diagnosed Claimant with intravertebral disc disorder, S/P lumbar laminectomy and fusion. (Tr. 253). Claimant underwent a lumbar spine CT scan on July 8, 2005 which showed at L4-5 "[b]road-based posterior disc protrusion combines with facet hypertrophy and ligamentum flavum hypertrophy to produce at least 40% acquired central spinal stenosis with what appears to be at least moderate to severe bilateral neural foraminal stenosis." (Tr. 249-250).

On July 11, 2005, Claimant again saw Dr. Jenkins. On this visit, Dr. Jenkins diagnosed Claimant with lumbar stenosis. (Tr. 247).

On October 3, 2005, Claimant underwent a lumbar discogram. The testing revealed Claimant experienced significant discogenic pain with disc desiccated and epidural spread at L3-4 and L4-5. Minimal invasive surgery was eliminated because of the involvement

of two levels and because of Claimant's prior fusion.  Dr. Amayem recommended Claimant have a surgery consult to determine if a surgeon could help his condition.  (Tr. 257-258).

In his decision, the ALJ concluded Claimant was disabled during a closed period between June 2, 2002 and December 3, 2003, with the severe impairments of disorder of the spine, discogenic and degenerative.  (Tr. 17, 21).  However, she also concluded Claimant had made improvement based upon the December 3, 2003 report of Dr. Reynolds.  (Tr. 19).  The ALJ further found Claimant retains the residual functional capacity to perform sedentary work, with the caveat that he must change positions every thirty minutes, with no stooping, bending, climbing stairs and ladders or working in unprotected heights.  (Tr. 20).  The ALJ recognizes sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Sedentary work also includes sitting with a certain amount of occasional walking and standing.  (Tr. 21).  Relying upon the testimony of a vocational expert, the ALJ found Claimant could perform the jobs of grinder/press operator, assembly worker, and surveillance system monitor.  Id.

Defendant may not terminate disability benefits without a finding that a claimant has medically improved to the point that he is able to perform either his past work or "other work" existing in significant numbers.  Hayden v. Barnhart, 374 F.3d 986, 994 (10th

11

Cir. 2004). The term "medical improvement" is defined in the Social Security regulations as follows:

> *Medical Improvement*. Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).

20 C.F.R. § 404.1594(c)(1).

The burden rests with Defendant to demonstrate medical improvement related to the ability to work and that a claimant can engage in substantial gainful activity. Hayden, 374 F.3d at 988 (citations omitted).

In this case, the ALJ ignored the prior restrictions established by Dr. Reynolds in his September 23, 2003 report. These restrictions included working four hours per day and a five pound weight restriction. He never lifted these restrictions. The ALJ apparently improperly relied upon the testimony of Dr. George L. Dixon, who testified the failure of Dr. Reynolds to lift the weight restriction must have been a mistake. (Tr. 282). It is significant that the ALJ expressly relied upon Dr. Reynolds' report to establish the December 3, 2003 date as a cutoff point to Claimant's benefits but failed to recognize the other restrictions contained in the same physician's reports. Since the ALJ's RFC specifically runs contrary to Dr. Reynolds' restrictions, the ALJ's decision must be reversed for further evaluation. Moreover,

considerable medical evidence exists in the record which would indicate Claimant's medical condition has not improved or has improved to a lesser degree than recognized by the ALJ in her decision. On remand, the ALJ is obligated either to seek further information from Dr. Reynolds concerning his restrictions or modify her determination of a cutoff date in line with the medical evidence.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 21st day of January, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE